## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

KATIE SCHILLING,

      Plaintiff,

vs.

SACO FALLS MANAGEMENT LLC;
HUSE SCHOOL APARTMENTS LP; and
JON ST. PIERRE,

      Defendants.

Case No.

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1.　　This is a housing harassment case.

2.　　Huse School Apartments LP owns Huse School Apartments in Bath, Maine. Saco Falls Management LLC manages the Huse School Apartments. Katie Schilling rented an apartment at Huse School Apartments and was sexually assaulted by Jon St. Pierre, a maintenance man employed by Saco Falls Management. Schilling now sues to recover for her injuries.

### Jury Trial Demand

3.　　Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

### Jurisdiction & Venue

4.　　This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because of Schilling's federal Fair Housing Act claim.

5.      This court has subject-matter jurisdiction over Schilling's remaining claims under 28 U.S.C. § 1367 because they arise from the same facts as her federal claim.

6.      Venue is proper in this judicial district because the relevant events occurred in Sagadahoc County and the individual parties reside in Cumberland County.

## Parties

7.      Plaintiff Katie Schilling is a person living in Brunswick, ME.

8.      Defendant Jon St. Pierre is a person living in Standish, ME.

9.      Defendant Saco Falls Management, LLC is a Maine limited-liability company.

10.     Defendant Huse School Apartments LP is a Maine limited partnership.

## Allegations

### *The Huse School Apartments*

11.     Huse School Apartments is a residential housing complex located at 39 Andrews Road in Bath, Maine.

12.     It has about 58 rental units.

13.     At all relevant times, the Huse School Apartments were owned by Huse School Apartments LP.

14.     Saco Falls Management is a property management company.

15.     At all relevant times, Saco Falls Management managed the Huse School Apartments on behalf of Huse School Apartments LP.

16.     When tenants encountered maintenance issues at the Huse School Apartments, they were instructed to notify Saco Falls Management of the needed repair.

17.     When a repair was needed inside a tenant's apartment, Saco Falls Management typically dispatched two maintenance employees to complete the work together.

*Jon St. Pierre*

18.     At all relevant times, Jon St. Pierre worked for Saco Falls Management.

19.     Saco Falls Management employed St. Pierre as a maintenance worker at the Huse School Apartments.

20.     St. Pierre performed typical maintenance duties for Saco Falls Management including maintaining and replacing smoke detectors.

*Katie Schilling*

21.      Katie Schilling is a young, single woman.

22.     Schilling moved into a one-bedroom apartment at the Huse School Apartments in August 2022.

23.     Schilling slept on a double bed in the living room so that her young daughter could have the bedroom.

*Jon St. Pierre Harasses Schilling*

24.     On Monday, June 23, 2025, the smoke detector in Schilling's apartment began to chirp.

25.     Schilling called maintenance that afternoon to report the chirp prior to leaving for work.

26.     When Schilling returned from work shortly after 8 p.m., the smoke detector was still chirping. Schilling called the maintenance number again and was told that a maintenance worker would contact her.

27.     At 8:27 p.m., St. Pierre called Schilling to notify her that he had received a call about her smoke detector and that he would be there in about an hour and fifteen minutes.

28.     St. Pierre arrived alone at Schilling's apartment around 9:45 p.m.

29.     Schilling was surprised that St. Pierre was alone. When maintenance workers had done work in her apartment in the past, they had always come in pairs.

30.     St. Pierre set up his ladder in the living room and began checking out the smoke detector that was chirping.

31.     St. Pierre replaced the batteries in the smoke detector, but it continued to chirp.

32.     St. Pierre then told Schilling that he was going to need to replace the smoke detector and asked Schilling if she could show him where the fuse box was located.

33.     When Schilling walked into the bedroom where the fuse box was located, St. Pierre followed closely behind her.

34.     As Schilling was pointing out the fuse box, St. Pierre stepped closer to Schilling and began rubbing his groin into her backside.

35.     Shocked, Schilling quickly exited the room.

36.     After St. Pierre exited the bedroom, he briefly stepped outside Schilling's unit to grab another smoke detector. When he returned, St. Pierre climbed the ladder again and installed the new smoke detector.

37.     Once the installation was complete, St. Pierre climbed down the ladder and approached Schilling who was standing in the living room.

38.     St. Pierre began poking Schilling in her mid-section. Schilling backed away from St. Pierre, but he continued walking towards her until she was backed up against her bed, forcing her to sit down.

39.     While St. Pierre was poking Schilling, he kept saying things like, "You like that?" and "Don't you like that?" and "Isn't this fun?"

40.     Schilling was so scared she could feel her chest pounding.

4

41.     St. Pierre was much bigger and much stronger than Schilling.

42.     St. Pierre then pushed Schilling backwards so that the upper part of her body was lying back on the bed while her feet were on the floor. St. Pierre then raised up Schilling's shirt, leaned over her, and began groping and licking her breasts.

43.     St. Pierre also rubbed Schilling's vaginal area on the outside of her shorts.

44.     St. Pierre pulled out his penis and began touching himself.

45.     St. Pierre told Schilling that she could not tell anyone about what had happened, that he was married, and he would get into big trouble if anyone found out.

46.     Shortly after that, St. Pierre stood up.

47.     St. Pierre then gathered his belongings and left.

48.     Schilling was in shock and didn't sleep at all that night.

49.     The next morning, when Schilling went out to the smoking area, another resident she was friendly with asked her if she was okay. Schilling ended up telling this resident and another resident what St. Pierre had done to her the night before.

50.     The two residents encouraged Schilling to tell the property managers, which she did.

51.     Schilling then called the police and reported the sexual assault.

52.     St. Pierre's employment as a maintenance worker with Saco Falls Management gave St. Pierre access to Schilling's apartment and the opportunity to sexually assault her.

53.     Saco Falls Management gave St. Pierre keys to all of the apartments at Huse School and sent St. Pierre alone, at night, to Schilling's apartment to work.

54.     On information and belief, Saco Falls Management did not terminate St. Pierre.

55.     However, two days after Schilling reported the sexual assault to Saco Falls Management, one of the property managers informed her that Huse School Apartments was moving forward with an eviction that, before Schilling's report, Huse School and Schilling had agreed to put on hold.

56.     Before the sexual assault, Huse School Apartments LP had filed a complaint for forcible entry and detainer against Schilling for back rent.

57.     Following a court hearing on the complaint, Schilling reached an agreement with Huse and signed a stipulation for judgment written by an attorney for Huse. Schilling was not represented at the hearing or in the negotiations with Huse.

58.     In the stipulation, Huse and Schilling agreed that Huse would hold off on evicting Schilling if she met certain conditions, including paying her rent.

59.     Under the stipulated agreement, Huse could only move forward with the eviction if Schilling failed to comply with those conditions.

60.     Huse pressed forward with the eviction by serving Schilling with a writ of possession just two days after Schilling reported the sexual assault to Huse.

61.     At that time, Schilling was complying with all of the conditions of the agreement.

62.     Schilling was so distraught in the days following the sexual assault that she was unable to work and was fired from her job.

63.     As a result of the sexual assault, Schilling has experienced emotional distress and bodily injury, including depression, anxiety, panic attacks, loss of appetite, and insomnia.

## Claims for Relief

## Count 1 – Federal Fair Housing Act

(Against All Defendants)

64.    Schilling incorporates all other allegations here.

65.    Defendants injured Schilling by committing discriminatory housing practices in violation of the federal Fair Housing Act, including:

   a.   Hostile environment harassment based on sex in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.600(a)(2); and

   b.   Retaliation in violation of 42 U.S.C. § 3617 and 24 C.F.R. § 100.400(c)(6).

66.    Schilling is therefore entitled to compensatory damages, punitive damages, declaratory relief, attorneys' fees and costs.

67.    Each Defendant is directly liable or vicariously liable for the discriminatory housing practices.

## Count 2 – Negligence

(Against Saco Falls Management LLC and Huse School Apartment LP)

68.    Schilling incorporates all other allegations here.

69.    Each Defendant other than St. Pierre owed Schilling a duty to hire, train, and supervise St. Pierre so as to prevent St. Pierre from sexually harassing Schilling.

70.    Each Defendant other than St. Pierre breached that duty/those duties, causing St. Pierre's harassment of Schilling.

71.    The breach/breaches injured Schilling.

72.    Schilling is therefore entitled to compensatory and punitive damages.

7

## Count 3 – Assault

### (Against All Defendants)

73.    Schilling incorporates all other allegations here.

74.    St. Pierre put Schilling in imminent fear of an offensive, unreasonable, unconsented, and unpermitted sexual touching.

75.    Each Defendant is directly liable or vicariously liable.

76.    That conduct injured Schilling.

77.    Schilling is therefore entitled to compensatory and punitive damages.

## Count 4 – Battery

### (Against All Defendants)

78.    Schilling incorporates all other allegations here.

79.    St. Pierre battered Schilling by making offensive and harmful contact with her, he intended to do so, and she did not consent nor was the contact permitted.

80.    Each Defendant is directly liable or vicariously liable.

81.    That conduct injured Schilling.

82.    Schilling is therefore entitled to compensatory and punitive damages.

## Prayer for Relief

83.    Schilling prays for a judgment with the following relief:

    a.   Compensatory damages,

    b.   Punitive damages,

    c.   Attorneys' fees and costs,

    d.   Pre- and post- judgment interest,

    e.   Declaratory relief, and

  f. All other relief that the court finds just.


Date: June 16, 2026       /s/ Allan K. Townsend
                  Johnson, Webbert & Beard, LLP
                  1 Bowdoin Island Mill, Ste. 300
                  Topsham, Maine 04086
                  (207) 623-5110
                  atownsend@work.law

                  Tom Kayes
                  Loevy + Loevy
                  311 N Aberdeen St,
                  Chicago, IL 60607
                  (312) 243-5900
                  kayes@loevy.com
                  *(pro hac vice forthcoming)*

                  Maggi Carfield
                  Loevy + Loevy
                  311 N Aberdeen St,
                  Chicago, IL 60607
                  (312) 243-5900
                  carfield@loevy.com
                  *(pro hac vice forthcoming)*